PHILLIPS and others, Executors of SIMON, *against* PREVOST
and others.

It is a general rule, that where a defendant submits to answer, he
must answer fully; but this rule is subject to exception and modifi-
cation, according to the circumstances of the case : As where the
defendant objects to a discovery because the plaintiff has no title.

So, where a bill was filed by the executors of a creditor, claiming
under a judgment of more than *thirty-six* years standing, against
the legal representatives of the debtor, above thirty years after his
death, without accounting for the delay, or showing any attempt to
recover the debt at law, and seeking a discovery and account of
*assets* ; the defendants, after admitting the death of the original par-
ties to the judgment, and the representative character of the plain-
tiffs and defendants, may object to making any disclosure as to assets,
or the material objects of the bill, on the ground of the staleness of
the demand, and the great lapse of time.

THE bill stated, that *George Croghan*, deceased, on the
6th of *February*, 1799, executed a judgment bond to *Jo-
seph Simon*, deceased, conditioned to pay 2,200*l.* sterling,
on the 6th of *February*, 1782, with interest. That in *April*
term, 1779, a judgment was entered upon that bond, in the
Court of Common Pleas, in *Westmoreland* county, *Pennsyl-
vania.* That on the 13th of *February*, 1782, *George Crog-
han*, executed a bond to *J. S.* conditioned to pay 396*l.* on
the 13th of *February*, 1783, with interest. That on the
11th of *June*, 1782, *G. C.* made his will, and devised to his
daughter and only child, *Susannah*, the wife of *Augustin
Prevost*, his real estate, &c. That *G. C.* died, in 1782,
seized of certain lands in *Otsego* county, and of divers other
lands in the states of *New-York* and *Pennsylvania.* That
in 1790, *Susannah Prevost* died, intestate. *That four of the
defendants are her children.* That on the 5th of *November*,
1769, *G. C.* executed two bonds to *Goldsbrow Banyar* ; and

1819.

PHILLIPS
v.
PREVOST.

in *December*, 1769, a third bond, and a mortgage on 40,000 acres of land, to secure the payment of the bonds. That in *April*, 1804, *G. B.* assigned the bonds and mortgages to *John K. Beekman*. That in *October*, 1770, *John Morton* obtained a judgment in the Supreme Court of *New-York*, against *G. C.* for 10,000*l.* of debt, which judgment was, in 1804, assigned to *John K. Beekman*. That in *June*, 1804, administration *de bonis non*, with the will of *G. C.* annexed, was granted to the defendant *G. W. P.*, and in *August*, 1805, *John K. B.*, for a nominal consideration, assigned to the defendant *G. W. P.* the bonds and mortgage, and judgment, aforesaid. That *G. W. P.* caused the judgment to be revived, by *scire facias*, against the heirs of *G. C.* and a *fi. fa.* to be issued in *February*, 1806; and the *Otsego* lands were sold for 1,000 dollars to *W. P. Beers*, who assigned and released the same to the defendant, *G. W. Prevost*. That the judgment was revived, and the lands sold, with intent to bar the creditors of *G. C.*, and that *W. P. Beers*, purchased as agent of the defendant, *G. W. Prevost*. That on the 28th of *December*, 1810, the three defendants, *A. P.*, *A. J. P.*, and *S. P.*, released their right in the said lands, to the defendant, *G. W. Prevost*, which was, also, done the more effectually to bar the creditors of *G. C.* That the land is now held in trust by *G. W. P.* for the heirs of *G. C.*, and parts of the land have been sold, and the proceeds divided among those heirs. That *G. W. P.* as administrator *de bonis non*, has received and converted assets to his own use, or apportioned them among the heirs of *G. C.*, and withholds or conceals the amount. That other large tracts of land in *New-York*, and elsewhere, have descended to the defendants, as heirs of *G. C.*, but the situation, value, or disposition of the lands were not disclosed. *Prayer*, for discovery and account, and that the lands descended may be sold for the benefit of the plaintiffs, &c.

The answer of the defendant, *G. W. Prevost*, (filed *December*, 1818,) stated his ignorance as to the debt or claim,

of the plaintiffs, by bond or judgment. It admitted the relationship and character of the defendants. That *G. C.* by will, appointed five executors, all of *Pennsylvania*, and that *Michael Gratz,* one of the executors, married a daughter of *Joseph Simon,* deceased, and that he and *J. Simon* resided in *Philadelphia.* That *M. Gratz* died there, in 1804, and had assets in hand sufficient to satisfy the pretended claim, and all other debts of *G. C.* and he believed that such debt, if any existed, was satisfied by him. The defendant admitted, that he was administrator *de bonis non,* &c. but as to so much of the bill as seeks a discovery and account, and sale of the estate of *G. C.,* the defendant insisted, that considering the circumstances above stated, and the lapse of time, the debt is to be presumed satisfied, and that the defendant is not bound to make any further answer or disclosure in relation thereto.

Six exceptions were taken to the insufficiency of the answer, for not containing a due disclosure.

The master reported that the exceptions were well taken.

Exceptions were made to the master's report, and insisting that the answer was sufficient.

The cause was argued on the exceptions.

*Ch. Baldwin,* for the plaintiffs.

*Burr,* for the defendants.

*For the defendants,* it was contended,

1. That when a creditor seeks, in equity, satisfaction of a judgment at law, he must show that he had taken out execution. (*Mitf.* 115. 1 *P. Wms.* 445.)

2. That a defendant may insist by answer, that he is not bound to answer. (3 *Atk.* 276.)

PHILLIPS
v.
PREVOST.

*For the plaintiffs*, it was insisted, that where a defendant answers in part, he is bound to answer fully. (1 *Johns. Ch. Rep.* 73, 74. 3 *Maddock's Ch. Rep.* 70. 72. 11 *Ves.* 41. 1 *Ves.* jun. 292. 4 *Bro.* 12.)

*Dec.* 20*th.*  The cause stood over for consideration until this day.

THE CHANCELLLOR. The defendant, *George W. Prevost*, having answered certain parts of the bill, does not submit to answer that part of the bill which seeks a discovery and account of the assets of *George Croghan*, deceased, which may have descended to him as heir, or have come to his possession as administrator. His objection is founded upon matter appearing upon the face of the bill, and from which he insists that the discovery would be useless, as the plaintiffs have no subsisting valid demand, which can, or ought to be enforced in this court. The demand of the plaintiffs is founded upon a foreign judgment entered against *Croghan*, in 1779, and upon a bond given by him, in 1782, and the bill states that the plaintiffs are executors of the creditor, and that *Croghan* died in 1782.

Here is a lapse of thirty-six years since the creation of the debt, and the death of the defendant's ancestor, and the delay is not accounted for or explained, nor does there appear to have been any attempt to recover the demand at law.

The question is, whether the defendant is bound, under the circumstances of the case, to disclose and render an account in his answer, of the assets, real or personal, of *Croghan:* This brings up a point which has been very much discussed, and concerning which the *English* books abound with contradictory decisions.

I had occasion to examine the point, in the case of the *Methodist Episcopal Church* v. *Jaques*, (1 *Johns. Ch. Rep.* 65.) and it appeared to me, from the short examination which I was then enabled to make, that it was under-

stood to be the general rule of pleading, that if a defendant submits to answer, he must answer fully, but that the rule was subject to exceptions; and that, at any rate, if the defendant puts himself upon an objection to a full answer, it must be of a matter which would form a clear and absolute bar to the demand. The defendant, in that case, did not place himself upon such an objection, and there was no decided opinion given upon the general question.

Lord *Eldon* (16 *Ves*. 387.) said, that the old rule, before Lord *Thurlow's* time, was either to demur, or plead, or answer throughout, and he calls the new mode of answering to part of a bill, and refusing to answer to the residue, a sort of illegitimate pleading. In support of the old rule, the case of *Richardson* v. *Mitchell*, (*Mich*. 1725. *Select Cases in Chancery*, 51. 8 *Viner*, 544. pl. 6. 2 *Eq. Cas. Abr*. 67. pl. 5. S. C.) may be cited. That was a bill to set aside a purchase, and to have a discovery of the site and profits of an estate, and the defendant, by answer, insisted he was a purchaser, and that he was not obliged to make a discovery. But Lord *King* allowed an exception to the answer, though what he answered might have been good by way of plea; and the case of *Stephens* v. *Stephens*, before Lord *Macclesfield*, was cited, in which to a bill for discovery of rents and profits of an estate claimed by will, the defendant claimed title, and insisted he was not obliged to account until the right was determined. The Chancellor, however, held, that though it might have been good by way of plea, yet having answered, he must answer the charge in the bill.

This decision by Lord *King*, in the case of a purchaser, is clearly overruled by a case which I shall mention, before Lord *Loughborough*, and which seems to be acquiesced in. There are, also, some of Lord *Hardwicke's* decisions, which *do allow* the defendant to object, by answer, to a further answer.

Thus, in *Gethin* v. *Gale*, (cited in *Sweet* v. *Young*, *Amb*. 353.) the bill was by an heir and creditor against a

devisee, for an account. The defendant insisted in the answer, that the plaintiff was not entitled to any debt owing from the estate of the testator, or to any legacy under his will, and, therefore, the defendant was not compellable to account, or discover to the plaintiff, the testator's estate. On exceptions to the answer, and which had been allowed by a Master, Lord *Hardwicke* held the answer sufficient, as the plaintiff's right was not apparent. I think that Lord *Eldon* has somewhere said, that there must be some mistake in the observations imputed to Lord *Hardwicke*, in that case, but I presume there was no mistake in the fact, that a defendant refusing, in his answer, to discover and account, for reasons therein assigned, was not required to answer fully. So, in another case before Lord *Hardwicke*, (*Honeywood* v. *Selwin*, 3 *Atk.* 276.) the defendant, in his answer, insisted, that he was not bound to make a discovery that would subject him to statute disabilities, and the answer, on exceptions taken, was held sufficient, and the Chancellor observed, that the defendant could not have demurred, for that would have admitted the facts charged to be true. In *Finch* v. *Finch*, (2 *Ves.* 491.) the defendant objected, in his answer, to certain discovery; and in the discussion of the subject, Lord *Hardwicke* observed, that you could not ask a discovery of him whom you might examine as a witness.

The contests and embarrassments respecting this mode of pleading, first began, in the Court of Chancery, under Lord *Thurlow*. I say in the *Court of Chancery*, for the rule is well established in the equity side of the Court of Exchequer, that a defendant may, in his answer to part of a bill, object to a further answer. Thus, in *Randall* v. *Head*, (*Hard.* 188.) the Court held, that where the defendant, in his answer, denied the custom by which the plaintiff claimed tithes, he need not discover the amount or value of the tithes, until the right of the plaintiff had been tried, and if found against the defendant, he should be examined upon interrogatories, to discover his knowledge. So, again, in

*Sweet* v. *Young*, (*Amb.* 353.) the defendant, in his answer, as executor, denied the plaintiff's pretension, as next of kin, to an account, and refused to set one out, and the Court of Exchequer held the answer sufficient. The same rule was followed in the case of *Jacobs* v. *Goodman*, (3 *Bro.* 488. *note.* 2 *Cox*, 282. S. C.) in which the plaintiff stated a copartnership, and called for an account. The defendant, in his answer, set out a special agreement, and denied all other concern with the plaintiff, and stated no account. On exception to the answer, it was held by the Court of Exchequer, that the plaintiff was not entitled to an account, unless there was a partnership, and that the answer was sufficient. If it were not so, any man might compel the first mercantile house in *London* to account. So, also, in *Richardson* v. *Hulbert*, (1 *Anst.* 65.) on a bill by an heir against a trustee, the defendant said he never acted as trustee, and did not answer the charge of fraud; and the answer, on exception, was held sufficient, for the defendant, disclaiming all interest, had reduced himself to a mere witness. Another case in the Exchequer was cited by the counsel in 11 *Vesey*, 286. in which upon a bill by a vicar against the occupier, the latter by his answer denied the vicar's right, and did not set forth the quantity and value, and an exception to the answer was overruled. Indeed, the Exchequer practice is admitted by Lord *Eldon*, who supposes it may be attended with less inconvenience, as by the practice of that Court exceptions to an answer are not referred to a master, but go before the Court for determination, in the first instance.

The first case which seems to have given rise to the discussion in Chancery, was *Cookson* v. *Ellison*, (2 *Bro.* 252.) The plaintiff had made a defendant a party, who had no interest, and might have demurred, but he answered all but one interrogatory. He had, in fact, stated part of a conversation, and not the whole; and Lord *Thurlow* said, that as the defendant had submitted to answer, he could not enter into the question, whether a demurrer or plea would have

1819.

PHILLIPS
v.
PREVOST.

been allowed, but he must answer fully, and he allowed the exception to the answer. Lord *Kenyon*, afterwards, when sitting as Master of the Rolls, in *Newman* v. *Godfrey*, (2 *Bro.* 322.) said, that this case was wrong; and he held, that where the defendant, by a disclaimer, had reduced himself to a mere witness, he was not bound to answer further. But Lord *Thurlow*, in *Cartwright* v. *Hately*, (3 *Bro.* 238. 1 *Ves. jun.* 292. S. C.) again asserted the same doctrine, which he had laid down in *Cookson* v. *Ellison*; and in *Shepherd* v. *Roberts*, (3 *Bro.* 239.) he applied it to a different case than that of a witness. The plaintiff claimed to be a partner, and called for an account. The defendant, in his answer, denied the partnership; and the chancellor, on exception, held that the defendant must answer fully, and that he should have pleaded that he was not a partner.

Thus stood the cases on the point, when Lord *Loughborough* took the great seal, and he seems to have followed Lord *Kenyon*, and to have overruled the doctrine of Lord *Thurlow*, on this point of pleading.

In *Jerrard* v. *Saunders*, (2 *Ves. jun.* 454.) the defendant, in his answer, stated a purchase for a valuable consideration, without notice, as a bar to a further discovery. The answer was excepted to, on the ground that a defendant who submits to answer is bound to answer fully. But the Lord Chancellor overruled the exception, and said that *Cookson* v. *Ellison* was certainly erroneous, and that in *Shepherd* v. *Roberts*, Lord *Thurlow* afterwards changed his opinion. Again, in the case of the *Marquis of Donnegal* v. *Stewart*, (3 *Ves.* 446.) the defendant, in his answer to a bill for an account, stated facts, and denied the ground upon which an account was prayed; on exception to the answer for not setting forth an account, Lord *Loughborough* said, the answer denied the species of dealing to entitle the plaintiff to an account, and he held the answer sufficient. So, also, in *Phelips* v. *Caney*, (4 *Ves.* 107.) it was held, that an administrator disputing, by his answer, the foundation of the bill,

viz. a balance of accounts against the intestate's estate, was not bound to set forth an account of the personal estate by way of schedule.

The weight of authority was, thus far, decidedly in favour of the practice in the Exchequer, when the question first came under the review of Lord *Eldon.*

In three cases which were brought before him in succession, (*Dolder* v. *Lord Huntingfield, Foulder* v. *Stuart,* and *Shaw* v. *Ching,* 11 *Ves.* 283. 302. 305.) the same point was raised and much discussed. His lordship felt the difficulty and embarrassment of the question, and avoided any decided opinion, though the inclination of his mind was evidently in favour of the rule declared by Lord *Thurlow.* He said, " It would be a very painful and difficult duty, when the Court was called to it, to say which of the various and discordant opinions expressed by Lord *Thurlow,* Lord *Kenyon,* Lord *Rosslyn,* and Lord Chief Justice *Eyre,* was right." He thought that whenever the question came fairly before him, it would be infinitely better to decide that the objection should be made by plea rather than by answer; and that the question came to this, how much of the answer, considered as a plea, would be a good defence to the whole prayer for discovery and relief. The proceedings would be less burthensome and expensive by plea, which brings forward a fact to displace the equity, than by allowing the defendant to answer just what he pleases, and compelling the plaintiff to reply to the answer, as he found it, and go to proof. He was convinced the forms of pleading could not stand as they then were, upon the reported cases, for it was a general rule, though with exceptions, that the bill and answer should form a record, upon which a complete decree might be made at the hearing. He stated these difficulties in *Rowe* v. *Teed,* (15 *Ves.* 372.) and again, in *Sommerville* v. *Mackay,* (16 *Ves.* 387.) where he observed that the inconvenience of this new mode of pleading was, that the defendant was not judged of by the Court, in the first instance, (as

1819.

PHILLIPS
v.
PREVOST.

it was by the Exchequer Practice,) but it went first to the master, upon exceptions to the answer, and then to the Court, upon exceptions to the report.

This is the result of the cases before Lord *Eldon.* He has stated the inconvenience of this new mode of pleading, which had been sanctioned by Lord *Kenyon,* and Lord *Rosslyn,* but none of the cases contain a direct decision of his upon the point, either way. As far as adjudged cases go, the preponderance is in favour of the new rule, as his lordship has been pleased to term it. It is conceded in all the discussions, that there are excepted cases to the old rule, that if the defendant answers at all, he must answer throughout; as where the discovery would criminate, or where the defendant sets up a purchase for a valuable consideration. Lord Chancellor *Manners,* who had followed Lord *Thurlow's* rule, in *Leonard* v. *Leonard,* (1 *Ball. & Beat.* 323.) though he admitted, at the same time, that there was no question so unsettled, makes a third exception in *Stratford* v. *Hogan,* (2 *Ball. & Beat.* 164.) to the rule, that where a party undertakes to answer, he must do it fully. He says a solicitor may, in his answer, refuse to discover deeds or facts confidentially communicated to him by the client.

It is very difficult to know what to do with a course of pleading so extremely unsettled. I have recently held, in the case of *Green* v. *Winter,* upon exceptions to an answer, that where the defendant had disclaimed all interest in the subject matter of the interrogatory, and reduced himself to a mere witness, that he was not bound to answer inquiries as to the situation and value of the subject. The inquiry would be perfectly useless, for the answer could not be read in evidence against any other person; and I could not perceive the propriety, or feel the necessity of requiring a further answer, merely to serve the curiosity or convenience of the plaintiff. Nor can I perceive the good sense of requiring long accounts and schedules from a defendant, when a defence is set up in the answer, which meets the title. If

the matter of defence should fail, the defendant might then be required to answer further; or if an account should be decreed, cannot the defendant be compelled to answer upon interrogatories, to the matter of the account?

The strong inclination of Lord *Eldon's* opinion, that a defendant could not answer as to part of a bill, and refuse, in the answer itself, to answer the residue, was declared by the Vice-Chancellor, in *Mazairedo* v. *Maitland*, (3 *Madd. Ch. Rep.* 66.) to be so useful a rule that he should always adhere to it. I presume, however, he must be understood to mean, under the exceptions which Lord *Eldon* himself had agreed to, and, perhaps, there may be other exceptions equally pressing. The great point, in the case before me, now occurs: is the defendant bound to go on and disclose the assets of his ancestor, under the denial of the plaintiff's right to them? The argument, in the cases, in favour of a full answer is, that the defendant should raise his objection by plea. The whole controversy resolves itself into the mode and form of pleading, and may safely rest upon a question of comparative convenience. The defendant may insist upon the benefit of the statute of limitations, in his answer, as well as by plea. This has been done repeatedly. (*Lacon* v. *Briggs*, 3 *Atk.* 105. *Prince* v. *Heylin*, 1 *Atk.* 493. *The Equity Draftsman*, p. 389.) But here there is no statute of limitations to plead, for the demand is stated to be founded upon specialty, and the defendant relies, in his answer, upon the staleness of the demand, and the lapse of time, as a bar to the aid of the court. A plea of payment, and a reliance upon the presumption in support of it, as is the course at law, I apprehend, would not do in this case, for payment is matter of defence, on taking the account before the master. The province of the plea is quite limited in this Court, and is confined to certain precise, single, and specific matters of defence. The answer is more loose and comprehensive, and embraces a large field of equitable matter. If the case be evidently such, upon the face of the pleadings,

1819.

Phillips
v.
Prevost.

as that an account cannot be decreed, why should an account be stated in the answer ? It would be utterly useless, unless the plaintiffs can make out a case proper for a reference to take an account. The defendant had no other way to raise the objection in pleading, but by the answer, and this consideration has great weight in favour of the sufficiency of the answer. He could not have demurred to the bill, for this would be depriving the plaintiff of the opportunity of accounting for the lapse of time. In an ordinary case, perhaps, an executor ought to discover assets, though he denies the debt ; and as the Court of Exchequer said, in *Randel* v. *Heap*, already cited, there is no inconvenience in the case. But here would be very great inconvenience to the defendant to meet (when the plaintiff had no just title) all the charges in the bill about the complicated arrangement and settlement of the estate of *Croghan*, among the heirs. Here the plaintiffs come with a demand, after lying by thirty-six years, and, under cover of that stale claim, seek to rip up the settlement of the family estate.

Lord *Hardwicke*, in *Lacon* v. *Briggs*, said, that to decree an account against an executor, after the plaintiff's intestate had been dead twenty-seven years, and the defendant's testator ten years, and no demand in seventeen years, would be making *one of the worst precedents for disturbing the peace of families.* And in *Sturt* v. *Mellish*, (2 *Atk.* 610.) he refused to direct an account, on the presumption of satisfaction from length of time, and an acquiescence by the plaintiff for fourteen years. The present case, as it stands, is much stronger than either of those referred to ; and I cannot see the fitness of compelling the defendants to state an account of the assets of *Croghan*, when it would be impossible, without further explanation, to decree an account.

It is no doubt a good general rule, that the defendant shall not stop short in his answer, but that having submitted to answer, he shall fully answer. If he consents to detail part of a conversation, why should he not detail it entirely ? If

the defendant in this case had given an account of the assets in part, he ought to have done it in full, because he should have taken his objection in time, if he intended to rest upon it. He cannot select part of a question, and refuse to answer the rest. In *Agan* v. *The Regent's Canal Company*, (*Cooper's Eq. Rep.* 212.) the Vice-Chancellor considered it as a uniformly settled practice, that a defendant who answers in part must answer fully as to *that point*, and cannot refuse on the ground of immateriality, but he did not touch the great question in which the answer objects to a discovery, because it denies the title. In *Somerville* v. *Mackey*, from which case Sir *John Leach* extracted Lord *Eldon's* opinion, as to the rule to which he meant to adhere, the defendant had answered so fully as even to give a schedule of books and letters relating to a trade, but refused to produce the books ; and the only question was, whether he ought not produce them. There cannot be any inflexible rule of pleading upon this subject. We have seen how far it is already subject to modification and exception, according to circumstances. The reason and convenience of the case must determine when, and how far, the application of the general rule, which I am willing to recognise as a *general* rule, is to be controlled. The case before me appears to be one in which the defendant may, by answer, object to a disclosure of assets, by putting himself upon the great lapse of time, which must, of course, (unless sufficiently accounted for,) stop the taking of an account of the estate, and cause the bill to be dismissed. This case resembles that of *Ellison* v. *Moffat*, (1 *Johns. Ch. Rep.* 46.) in which the real and personal representatives of a testator were called on by a creditor to account, after a lapse of twenty-six years; and they declared, in their answer, that they were unable to account, and insisted on the staleness of the demand, and the lapse of time, and on that ground the bill was dismissed. The defendant has here admitted himself to be an heir, and

administrator of *Croghan,* but he has not attempted any an-
swer whatever, or made any partial disclosure, as to the sub-
stance and purport of the bill.   He has placed himself, at
once, upon the objection to the plaintiff's right of action ;
and this case has as good pretensions, as that of an answer
setting up a purchase, to form an exception to the general
rule.

I am, accordingly, of opinion, that the objections to the
Master's report are well taken,  and that the answer is suf-
ficient.

Exception allowed.