H. S. FRENCH *vs.* A. H. RAINEY & Co. and F. L. BLUME.

October Term, 1876.

DISCOVERY—DEFENDANT MAY DEFEND HIMSELF FROM BY ANSWER.—A defendant who answers is, in this state, entitled to protect himself from a discovery,

whenever he might have protected himself by demurrer or plea, by relying upon the matters of demurrer, or incorporating the matters of a plea in his answer, the answer in the latter case having all the requisites of a plea.

DISCOVERY WHERE PLAINTIFF'S RIGHT OF SUIT IS DENIED.—Where the objection to discovery is founded upon a denial of the complainant's right of suit, the defendant is entitled by answer to protect himself from the discovery consequential to the relief sought, but not from the discovery which will aid the complainant in obtaining that relief.

DISCOVERY UPON CHARGE OF FRAUD.—A general charge of fraud in a bill, if fully and unequivocally met by a denial in the answer, will not be a sufficient basis for a searching enquiry into, or a detailed disclosure of, matters of account.

DISCOVERY UPON A DECREE FOR RELIEF.—If the complainant show himself entitled to relief at the hearing, he may have an order to examine the defendant before the master as to the matters in relation to which discovery was sought by the bill, and successfully resisted because consequential to the relief.

*Shackleford & Baker*, for complainant.
*M. B. Howell*, for defendants.

THE CHANCELLOR:—In this case the complainant has excepted to the sufficiency of the answer of the defendant Rainey, and both parties have appealed from the rulings of the master on these exceptions. The point raised by one of these exceptions has been fought over in the courts for a hundred years, and cannot be said to have been yet determined. The question is whether a defendant who undertakes to defend by answering the bill, instead of demurring or pleading, can, by denying the complainant's right to an account, protect himself from giving in his answer the account called for.

The bill discloses the following facts: On the 14th of October, 1869, the complainant commenced shipping to Rainey & Co., as factors, at New York, cotton for sale on his account. The complainant was to send samples of cotton, as purchased, to Rainey & Co., who were to contract in the market for the sale of the cotton at a future date to be met by the shipments. Rainey & Co. were to receive and sell the cotton, accept and pay drafts of complainant drawn on the faith thereof, and for such acceptances, and for the sale, storage, handling, etc., of said cotton, they were to

41

have reasonable compensation. Complainant continued to ship cotton to Rainey & Co., under this arrangement, until the 10th of September, 1872, shipping in all between 6,000 and 7,000 bales. In 1872, and prior to the last shipments, Rainey & Co. demanded collaterals to cover the risks of the business, and complainant, being the owner of a valuable lot in Nashville, with a warehouse thereon, sold the same to the defendant Blume for $30,000, taking his six notes for $5,000 each, two of them at one year, two at two years, and two at three years, and transferred three of these notes, being one of each set, to Rainey & Co. as collateral security. The payment of these notes was secured by a lien on the lot, retained on the face of the conveyance, and complainant agreed to give to the notes assigned to Rainey & Co. the priority of satisfaction. In May, 1873, Rainey & Co. demanded a settlement of complainant's accounts, producing a statement showing a balance then due of over $15,-000, and complainant gave them, in settlement of this balance, his three notes, dated May 1, 1873, at one, two, and three years, for $5,216 each. On the 14th of November, 1874, the defendant A. H. Rainey filed his bill in this court, against the complainant and Blume, to enforce the vendor's lien reserved for the payment of the three notes for $5,000 each, executed by Blume as above, and assigned as aforesaid. Such proceedings were had in this cause that, at the October term, 1875, a decree was rendered for the sale of the land, and the application of the proceeds in satisfaction of said notes. Under this decree the property was sold, and the sale was about to be confirmed, when this bill was filed to enjoin the confirmation. This branch of the case was rested upon supposed errors apparent on the face of the decree, but the injunction was refused, and, as a bill of review, the case is not now before us.

Another object of the bill is to get behind the settlement of May, 1873, and surcharge and falsify the accounts upon which it was based. To this extent the bill is purely an original bill, having no connection with that part of the bill

filed as a bill of review. If, indeed, the balance due to Rainey & Co. from complainant could be reduced or extinguished by reopening the settlement under this bill, the proceeds of the sale under the bill of Rainey, or the property itself, if bought by Rainey, would *pro tanto* belong to complainant, and he would have the right to attach them, as he has done, under this bill. But, treating the sale to Blume as good—and there is nothing in the bill to the contrary, and, if there were, the complainant could not dispute its validity—Blume is the only person who can attack the decree of sale for error of law apparent upon any of the points made by the bill, and he acquiesces. The bill does not show that the complainant has any interest in that suit, except as the holder of some of the notes given for the land, and he does not complain that his rights in this regard have been treated otherwise than in accordance with law. Whether a bill of review for error apparent in a decree, and an original bill for a wholly distinct purpose, can be combined, is a question not before us. Nor are we called upon to decide whether the bill contains upon its face matter sufficient to open a settled account. The present issue is as to the sufficiency of the answer.

The bill, as an original bill, seeks to go behind the settlement of May; 1873, upon the ground of the discovery of facts, since the settlement, which show that false and erroneous charges were made against the complainant in the account furnished to him by Rainey & Co. Although the complainant charges that he refused to settle at the time because the amount claimed was, in his opinion, not correct, and that he afterwards gave his notes in settlement upon the promise of Rainey & Co. that a full account should be made out and sent him, and errors, if any, corrected, yet the bill repeatedly, in setting out the charges complained of, states that it appeared "in the accounts rendered" to complainant that he is charged thus and so. From which it sufficiently appears that accounts were rendered to the complainant, and that these accounts were before him in

making out the allegations of his bill. The errors relied on, to which the exceptions in controversy relate, are as follows:

1st. The complainant authorized Rainey & Co. to make contracts for the sale of cotton to be delivered at a future day, the cotton to be purchased at Nashville and shipped to New York to meet the engagement; yet Rainey & Co. would sell complainant's cotton on receipt, using the proceeds for their own purposes, and afterwards go into the market and pretend to buy other cotton, charging commissions, storage, etc., when no cotton was actually bought, or intended to be delivered, but a wager was made on the price of cotton at a future time, and a margin " put up " to cover the difference between the actual price at the time and the agreed price ; that these contracts were made with persons unknown to complainant, and sometimes not with outside parties, but with members or clerks of the firm of Rainey & Co.; that the said contracts were illegal, and the charges thus created against complainant amount to $10,000.

2d. Rainey & Co. made false and fraudulent charges for insurance on complainant's cotton, and for storage, to the amount of several thousand dollars, when they had not in fact paid one dollar of these charges.

Upon these charges the complainant required Rainey & Co. to answer, " and exhibit a detailed statement of the sales of cotton, made by defendants, belonging to complainant;" also to state whether the " future " or illegal contracts were not taken by defendant Rainey, or some of the members or clerks of the house, and the names of the contracting parties; also in what office or company the insurance on the cotton was taken, in what warehouses the cotton was stored, and to exhibit receipts for the payment of such charges. The exceptions to the answer are that these requirements have not been complied with.

The bill shows a settlement of accounts, and the execution of notes in full of the balance due in May, 1873. It further shows that on the 14th of November, 1874, a bill

was filed by Rainey in this court, upon the basis of this settlement, to obtain the benefit of the collaterals placed in his hands for his indemnity by reason of the debt thus settled; that the present complainant answered that bill as a defendant, making no objection to the settlement, and that Rainey obtained in that suit the relief he sought. The present bill was principally aimed at preventing him from reaping the benefits of the suit by seeking to enjoin the execution of the decree. The answer of Rainey is an explicit denial of all the equity on which the bill rests as an original bill. It shows that the complainant was furnished regularly, from time to time, with accounts of all the various transactions, and with stated accounts, and finally with a full and complete account previous to the settlement. The bill itself shows, in effect, the same thing—that accounts were rendered, from which the complainant selects the items sought to be surcharged and falsified. Under these circumstances the exceptions are entitled to less favor than they would be if the equity were less fairly and fully met.

The allegation, that "future" contracts for the delivery of cotton were made without the authority of the complainant, is explicitly denied. There is also an explicit denial that any wagering contract for future delivery was made as charged, every contract being an "express agreement for delivery and receipt of cotton." The charge, that some of these "future" contracts were taken by members or clerks of the house, is only responded to by a general denial of every charge made on the page of the bill where it occurs as false. Such a general denial is not sufficient. The complainant is entitled to a specific answer to each specific charge. The defendant has, however, supplemented the general denial on this point by a statement, in another part of the answer, that the sales on account for complainant "were *all* made" to the following firms, naming them, and through the following brokers, naming them. This special answer, coupled with the general denial, is, I think, suffi-

cient. For the latter averment of fact is incompatible with the truth of the allegation generally denied, and gives the complainant the means, by naming the purchasers, of disproving the answer, if the latter be untrue.

The answer denies that any false or fraudulent charges for insurance and storage were made, and states positively that " no charge of insurance or storage was ever made, at any time, except when cotton was actually insured or stored." Each allegation of the bill on these points is, in turn, answered equally explicitly. The answer further states that sales of cotton are made in New York on the tables of brokers, and " they charged respondent the same rate that he charged complainant in his account." " Of course," the answer adds, " it is not possible now to furnish the receipts for payments of brokerage paid, or to tell the names of all the brokers employed. Respondent made sales through almost every prominent broker in New York." It is obvious that these statements fully cover the equity of the charges, and the demand for the receipts mentioned. The case is, therefore, narrowed down to this : Is the complainant entitled to a detailed statement of the sales of cotton made by the defendant, and to the names of the insurance companies in which the cotton was insured, and of the warehouses in which it was stored? Two points are involved in this query—the one, the general right of a complainant to demand of a defendant, who answers, a full answer in all respects, in every case ; the other, the right to enforce a technical rule to all its logical sequences, in all cases. It is obvious that, if it be true, as we have inferred from the bill, and as is sworn to in the answer, that the defendant has already furnished the complainant with all the accounts he calls for, the exhibiting of the account as required would be a useless labor and expense. So, if the answer fairly meets the equity of the bill, and is not evasive, the requirement of unnecessary details would be using the machinery of the court for no beneficial purpose. Neither point is free from difficulty, and

the first, one of the most vexed questions of the books. No better case than the one before us could be imagined to test the conflicting equities of both questions.

The general rule undoubtedly is that every objection to discovery which is founded upon a denial of the plaintiff's right of suit, or of his right to proceed with it in its existing state, should regularly be taken by demurrer, or plea, according to the circumstances of the case; and where the objection is not so taken, and the defendant answers the bill, he will be held to have waived the objection, and will be obliged to answer the bill throughout. *Mazerredo* v. *Maitland*, 3 Madd. 66; *Lancaster* v. *Evors*, 1 Phil. 349; *Swinborne* v. *Nelson*, 16 Beav. 416; *Elmer* v. *Creasy*, L. R. 9 Ch. App. 69; *Bank of Utica* v. *Messereau*, 7 Paige, 517. The reason is that the complainant is entitled to a full discovery of all facts alleged in the bill which may be important to the complainant in case he should succeed in showing that the particular defence attempted to be set up in the answer is false or unfounded. For, were it otherwise, the defendant, by putting in an answer denying some particular allegation which is necessary to the title of the complainant to relief, and putting every other allegation of the bill in issue by a general traverse in the usual form, might throw upon the complainant the burden of proving many things to which he was entitled to a discovery if the particular denial of the answer turned out to be unfounded. There are exceptions to the general rule, about which there never has been any conflict; such, for instance, as privileged communications, and discovery which might subject the defendant to penalties or forfeiture. *Stratford* v. *Hogan*, 2 B. & B. 164; *Parkhurst* v. *Louton*, 1 Mer. 400; *Cooke* v. *Turner*, 14 Sim. 218. The defendant is not bound to answer matter purely scandalous, impertinent, or immaterial. *Agar* v. *Regent Canal Co.*, Coop. Eq. 212; *Utica Ins. Co.* v. *Lynch*, 3 Paige, 210. The reason for these exceptions is that, even if the defence had been made by demurrer or plea, and overruled, the complainant would

not be entitled to the particular discovery, and, therefore, it could make no difference if the defence were made in the first instance by answer. The exception of a *bona fide* purchaser rests upon the same ground, such a purchaser being so far under the protection of the court that he will not be required to discover until the fact is disproved, even if he make defence by answer. *Jerrard* v. *Saunders*, 2 Ves. jr. 454; *Methodist Episcopal Church* v. *Jacques*, 1 Johns. Ch. 65. The English decisions have recently done away with this exception. *Ovey* v. *Leighton*, 2 Sim. & St. 234. And Chancellor Walworth doubts its propriety on principle. *Cuyler* v. *Bogert*, 3 Paige, 187. Another exception has been made where the defendant disclaims all interest, although the authorities are conflicting. *Cookson* v. *Ellison*, 2 Bro. C. C. 252; *Newman* v. *Godfrey*, 2 Bro. C. C. 322; *Green* v. *Winter*, cited 4 Johns. Ch. 214; *Richardson* v. *Mitchell*, Sel. Ca. 51.

When we come to the direct question, whether a defendant who denies by answer the complainant's right to an account is nevertheless required to give the account called for, the decisions are equally conflicting. Lord Macclesfield held, in *Stephens* v. *Stephens*, cited in Sel. Ca. 51, that he must discover; while Lord Hardwicke, in *Gethin* v. *Gale*, cited Amb. 353, reached the opposite conclusion. And Lord Thurlow, in *Shepherd* v. *Roberts*, 3 Bro. C. C. 239, which was a bill for a partnership account where the defendant denied the partnership, held, first, that the defendant must give the accounts called for, but afterwards, as we learn from Lord Loughborough, in *Jerrard* v. *Saunders*, 2 Ves. jr. 457, and from a note of the editor to *Hall* v. *Noyes*, 3 Bro. C. C. 483, reversed himself, and held the answer sufficient without the account. Lord Loughborough's views in favor of the latter ruling were strongly expressed in *Marquis of Donegal* v. *Stewart*, 3 Ves. 446, and *Phelips* v. *Carey*, 4 Ves. 107. The court of exchequer, on its equity side, has always ruled in the same way. *Randall* v. *Head*, Hard. 188; *Sweet* v. *Young*, Amb. 353;

*Jacobs* v. *Goodman*, 2 Cox, 282, and 3 Bro. C. C. 488, note; *John* v. *Ducie*, 13 Price, 632. And the inclination of Chancellor Kent, upon a review of the authorities, was in the same direction. *Phillips* v. *Prevost*, 4 Johns. Ch. 205.

The question came before Lord Eldon on several occasions, who, while he hesitated to overrule the current of decisions then prevailing, indicated a leaning to the contrary doctrine. *Shaw* v. *Ching*, 11 Ves. 283, and *Rowe* v. *Teed*, 15 Ves. 376. These doubts of their great chief were made certainties by Sir John Leach, in *Mazeredo* v. *Maitland*, 3 Madd. 72; and by Lord Manners, in *Leonard* v. *Leonard*, 2 Ball & B. 323. The conflict was, however, again renewed by Lord Cottenham, in *Adams* v. *Fisher*, 3 Myl. & Cr. 526, a decision tending towards the earlier cases; and by Lord Lyndhurst, in *Lancaster* v. *Evors*, 1 Ph. 349, expressing himself strongly the other way. These cases were followed by *Swinborne* v. *Nelson,* 16 Beav. 416, in which Lord Romilly, master of the rolls, dissents from the ruling in *Adams* v. *Fisher*, and, upon a review of the authorities, lays down the doctrine, broadly, that a defendant who submits to answer must answer fully, and cannot escape by denying the complainant's title. The bill was for the infringement of a patent, and called for an account of all articles manufactured and sold by defendant under a particular name, the quantities thereof, the names and addresses of the persons to whom sold, and the prices. The defendants denied all infringement, and yet, upon exceptions, were required to answer these sweeping interrogatories. The master of the rolls reiterated his rulings in *Clegg* v. *Edmonson*, 23 Beav. 125, where accounts were called for upon the ground of a partnership, and the partnership was denied. Both of these decisions were appealed from, and the result is thus told by Lord Selborne, in delivering the opinion of the court in *Elmer* v. *Creasy*, L. R. 9 Ch. App. 73: "What really happened in the court of appeal was that the lords justices succeeded in putting pressure upon the parties so as to obtain their consent to

reasonable terms for expediting the hearing, including such admissions for the purposes of that hearing as their lordships thought sufficient; and upon those terms the exceptions, or the appeals from the orders allowing them (I am not sure which, for these cases upon appeal are not reported), were ordered to stand over till the hearing. Vice-Chancellor Wood, in *De La Rue* v. *Dickinson*, 3 Kay & J. 388 (an exactly similar case to *Swinborne* v. *Nelson*), thought himself warranted by those precedents in making an adverse order—that exceptions for insufficiency should stand over to the hearing." In other words, to avoid the enforcement of a supposed general rule which was found to work harshly in the particular cases, the lords justices " put pressure on the parties," whatever that may mean, by which they were mildly constrained to postpone their demands until the question of right was first adjudged. Lord Romilly adhered to his previous rulings in *Great Luxembourg R. W. Co.* v. *Magnay*, 23 Beav. 646; *Read* v. *Woodroofe*, 24 Beav. 421; and *Howe* v. *McKernan*, 30 Beav. 547. In the last of these cases, however, the defendant seems to have admitted the equity of the bill, and in the second, his lordship refers to the appeals in the previous cases, the result of which was, he thinks, rather to confirm than shake his rulings, and undertakes to qualify the oppressive operation of these rulings. "If," he says, "I see that the substantial information is given, though not strictly and technically, I have always discouraged exceptions." And in answer to the objection of the difficulty of giving the discovery asked, which was searching and minute, he added: " If I find that the defendant has given a substantial answer, I shall not require of him a minute and vexatious discovery." The question was considered by the court of appeals in *Elmer* v. *Creasy*, L. R. 9 Ch. App. 69, and the opinion expressed *arguendo* by the Lord Chancellor that the rule that discovery, even if consequential on particular relief, could only be limited by demurrer or plea, " was in fact established both on technical grounds and also because a full discovery

of the details of the account might, in some cases, enable a, plaintiff to take an immediate and final decree at the hearing; and because, if the discovery were postponed till a later stage, the plaintiff might run the risk of losing it, altogether, by death or other intervening accidents." The particular case was, however, a redemption suit in which the defendant admitted the complainant's right to relief, and only objected to giving the details of the account at, that stage of the cause. The court, citing *Read* v. *Woodroofe*, add: "We are not now called upon to determine whether the defendant must, in answer to these interrogatories, set forth as full and detailed a statement of all the items of the account as he might be obliged to give under a decree for redemption. The court may be trusted to exercise a proper control over any attempt on the plaintiff's part to press for any such minuteness of discovery as would be either vexatious or unreasonable, as, indeed, it can do, in every case in which it is satisfied that any kind of discovery is required vexatiously or oppressively." Another paragraph of this opinion is highly suggestive: "The principle," it says, "expressed in Sir James Wigram's first, proposition (Wigr. on Disc. § 25), that 'the right of a, plaintiff to discovery is in all cases confined to the question, or questions in the cause which, according to the pleadings and practice of the courts, is or are about to come on for trial,' might indeed have seemed to justify the postponement, until after the decree, of all discovery as to items of account, concerning which no special relief was prayed; especially if Lord Gifford was right in refusing (as he did, in *Law* v. *Hunter*, 1 Russ. 100, and *Walker* v. *Woodward*, 1 Russ. 107) to receive at the hearing, or to enter in the decree as read, evidence as to such items."

In *Saull* v. *Browne*, L. R. 9 Ch. App. 364, the doctrine of *Elmer* v. *Creasy*, with its qualifications as therein expressed, was followed. But in *Great Western Colliery Co.* v. *Tucker*, during the same month, and reported in the same volume, p. 376, the court refused to require the defend-

-ant, whom the bill sought to charge as the complainant's
-agent, and who by answer denied the agency, to give the
discovery of accounts called for by the bill. "The ques-
-tion," say the court, "is whether the relation of principal
.and agent existed between the parties. * * * This is
exactly one of those cases referred to by the Lord Chan-
-cellor, in *Elmer* v. *Creasy*, where the court may be trusted
-to exercise a proper control over any attempt on the plaint-
-iff's part to press for discovery which would be vexatious
-or unreasonable." Nevertheless, it must be frankly con-
-ceded, the line of distinction is not very obvious, and the
-result of the authorities seems to be that the whole matter
-is left to the discretion of the court. But, to use the words
-of Sir James Wigram, in the work quoted by the Lord
-Chancellor, in *Elmer* v. *Creasy*, "the practice which leaves
-to a judge the decision of a cause according to a discretion
not reduced to rule, is in principle a denial of the suitor's
right." I am loth to rely upon precedents which lead to
-such an unsatisfactory conclusion.

In the meantime the English judges undertook, by the
38th order of the Orders in Chancery of 1841 (1 Ph. & Cr.
379), to remedy the evil in part. That rule provides that
-a defendant who answers may decline answering any inter-
rogatory, or part of an interrogatory, from answering which
he might have protected himself by demurrer. And the
Supreme Court of the United States, by their equity rules
-of 1844, went further, and expressly provided that "the
-rule, that if a defendant submits to answer he shall fully
-answer to all the matters of the bill, shall no longer apply
-in cases where he might by plea protect himself from such
-answer and discovery." Rule 39. Following in the same
line of travel, our Code, §§ 4318, 4319, provides that a
-defendant need not demur or plead specially in any case,
-except to the jurisdiction of the court, but may have all the
-benefit of a demurrer by relying thereon in his answer, and
-may incorporate all matters of defence in his answer. And
-our supreme court had previously held that the defence of

an innocent purchaser might be set up by answer, the answer having all the requirements of a plea. *High* v. *Batte*, 10 Yerg. 335. Under this legislation, and under the decisions themselves in their practical result, I am of opinion that a defendant who answers is entitled to protect himself from a discovery wherever he might have protected himself by demurrer or plea, by relying upon the matters of demurrer, or incorporating the matters of a plea in his answer, the answer, in the latter case, having all the requisites and particularities of the plea.

In this view the settlement of accounts relied on by the answer in this case, supported as it is by an answer denying the withholding of accounts and the false and fraudulent charges alleged in the bill, is a good plea in bar to all the discovery sought as merely consequential to setting aside the settlement. This covers the requirement upon the defendant to "exhibit a detailed statement of the sales of cotton, made by defendants, belonging to complainant." For this detailed account is only necessary in the event the settlement is opened, and the complainant permitted to surcharge and falsify its items. Moreover, the disclosures of the bill as to the accounts rendered to complainant, and upon which his charges are based, and the positive assertions of the answer that the accounts of each transaction were rendered at the time, and general accounts from time to time, and a full and final account previous to the settlement, bring this case within the exception to the general rule recognized by *Elmer* v. *Creasy*, if we concede the existence of the rule, namely, of an attempt on the complainant's part "to press for discovery which would be vexatious and unreasonable."

A more difficult question remains. The true key to the distinction between the discovery which a complainant is entitled to demand as of right, where the title of the complainant to relief is denied, and the discovery which he is not entitled to in such case, is struck by Sir James Wigram, in the quotation made in *Elmer* v. *Creasy*. The right of

the plaintiff to discovery, he says, is confined to the question to come on for trial; or, as he puts it elsewhere, in his treatise on Points of Discovery, §§ 91, 244, to "the plaintiff's case." He is not entitled to the discovery consequential on giving him the relief he seeks, but to the discovery which will aid him in obtaining that relief. Now, the gravamen of this bill, "the plaintiff's case," is error in the settlement sufficient to enable him to open it. If there is any part of the discovery sought to be obtained by the exceptions which would tend to show fraud in the accounts, the complainant is entitled to it, and the exception should be allowed. *Turney* v. *Bayley*, 4 De G. J. & S. 340. The bill does allege that the defendant made false and fraudulent charges for insurance and storing the cotton, and calls upon the defendants to disclose in what office or company the insurance was taken, and in what warehouses the cotton was stored. If, in fact, there have been false and fraudulent charges touching these items, the discovery sought might aid the investigation. Upon this branch of the enquiry I have had the greatest difficulty, not as to the principle involved, but to its application to the facts of this case. If a bill does by its facts disclose a case of fraud or concealment in accounts closed by note, the complainant is undoubtedly entitled to the discovery of any fact which may aid him in eviscerating the fraud. The doubt here is whether this bill does disclose any such fact, or is not a mere fishing bill, and therefore subject, as to this part of our enquiry, to the demurrer which is relied upon in the answer. A general charge of concealment of accounts, and fraudulent charges in an account which has been settled, would clearly not be a sufficient averment on which to base an enquiry into details. Such a charge is the allegation of a conclusion which the interested party is not permitted to draw. There must be positive averments of fact from which, if proved, the court can see that fraud intervened. *For* v. *Orndorf*, 7 Heisk. 167; *Randall* v. *Payne*, 1 Tenn. Ch.

143; *Bryan* v. *Spruill*, 4 Jones Eq. 27; *Palmer* v. *Mure*, 2 Dick. 489; *Sharpe* v. *San Paulo R. R. Co.*, L. R. 8 Ch. App. 598. Is the bill any better which makes only general charges of fraud as to particular branches of the account, not particular items, without stating any facts to show fraud? This bill does not take up any item of the account, and state, as a fact, that the item was never created. It simply alleges that defendants made false and fraudulent charges for insurance, to the amount of $——, when they had not paid one dollar of those charges. So of charges for warehousing the cotton. Is that anything more than to aver that every item in, or the whole of, a settled account is fraudulent, and call for a discovery? This subject is discussed by Sir James Wigram, in his Points of Discovery, § 189, *et seq.* His conclusion is that a general charge of fraud, if fully and unequivocally met by a denial, will not be a sufficient basis for searching enquiry or detailed disclosure. A bill so framed is purely a fishing bill, unless, indeed, a satisfactory reason can be given for the generality of the statement. No excuse is given in the case before us, although the complainant pretends that he has discovered fraud since the settlement. If he has made such discovery, he can surely point out one item of positive fraud on which to base his enquiries. I am of opinion that the bill does not lay a sufficient foundation of fact to sustain the inquisition embodied in the prayer of the bill, and sought to be carried into effect by the exception under consideration. *Blagrave* v. *Routh*, 8 De G. M. & G. 630.

The rights of the complainant to a discovery, if he shows himself entitled thereto on the hearing, will not be prejudiced. He will, in that event, be in the position of a complainant to whose bill a false plea has been put in, and issue thereon found in his favor. He may have an order that the defendant be examined on interrogatories before the master as to the matters in relation to which discovery is sought by the bill. *Astley* v. *Fountaine*, Rep. *temp.*

Finch, 4; *Brownsword* v. *Edwards*, 2 Ves. 247; *Dows* v. *McMichael*, 2 Paige, 345.

The master's ruling on the first exception will be reversed, and his rulings on the second and third exceptions sustained.