ABRAHAM V. VAN FLEET, JOHN T. BIRD AND HENRY C. PITNEY, ESQS., VICE-CHANCELLORS.

### GEORGE PACE

*v.*

### ELIAS M. BARTLES.

Where a bill is filed for an account, and the account does not appear, by the allegations and charges of the bill, to be useful in establishing the complainant's right to it, but appears merely as that which must ultimately be rendered in fulfillment of an obligation the enforcement of which is sought, the defendant need not set out the account in his answer, in case it is necessary to resort to answer rather than to plea or demurrer in resisting the complainant's alleged right to the account; but if the alleged right may be resisted by

371

plea or demurrer, and the defendant, instead of availing himself of either of those pleadings, chooses to answer, he must answer fully and without reserve, setting out the account.

---

On exceptions to a master's report upon exceptions to an answer for insufficiency.

*Mr. Paul A. Queen* and *Mr. Martin Wyckoff*, for the complainant.

*Mr. J. N. Voorhees*, for the defendant.

THE CHANCELLOR.

The complainant's bill alleges that Michael Pace died on the 1st of January, 1877, leaving a will by which he devised to his son George a farm of one hundred and eighty-seven acres, worth about $10,000, and then encumbered by a judgment for one thousand and some odd dollars, which Elias M. Bartles had recovered in 1876 against both Michael and George Pace in the supreme court of this State, upon which executions had issued. The complainant, George Pace, was appointed executor of the will, and the defendant, Bartles, was a witness to it. A *caveat* against the probate of the will having been filed, the complainant arranged with Bartles that Bartles, as his attorney in fact, should see to the probate of the will and the settlement of the father's estate, and should pay the expenses of so doing and charge them to the complainant. Bartles pretended to befriend the complainant, who was an ignorant and intemperate man, and at the same time conceived the design of getting title to the farm, and possession of it for a small and inadequate price. Probate of the will was secured in April, 1877, and in June of that year the defendant obtained from Pace and his wife a conveyance of the farm to himself, subject to his judgment. The deed recited that its object was to provide that when the property should be sold under the judgment, any surplus moneys that might be realized at the sale should go to Bartles. Bartles represented to the complainant that the purpose of the deed was to deter outsiders from buying the farm at the sheriff's sale, and to

Pace v. Bartles.

-enable him, Bartles, to buy it for the complainant. The real purpose of the deed, the bill charges, was to procure a release of the inchoate right of dower that Pace's wife had in the land. At the sheriff's sale, the defendant prevented all bidding against him by representing to those who would otherwise have bid that he desired to buy the farm for Pace, and then he bought the property for $2,000. After the sale he induced Pace to make an agreement in writing, which his attorney had prepared, and which is set out at length in the bill, designed, as the complainant understood it, to convert Bartles's deeds for the farm into a mortgage to secure to him the payment of $3,211 within six months. Pace tried to borrow the money necessary to pay this amount, but was thwarted in his efforts to do so by Bartles, who represented to one who proposed to lend, that the title to the farm was not perfect, and, in 1879, Pace was induced to surrender possession of the farm to Bartles, who thereupon entered into possession of the land, and has remained in such possession hitherto. During that possession he has cut and sold valuable timber and bark from the farm and has received the rents, issues and profits of the land.

The bill calls upon the defendant to account for the timber, bark &c. sold, and for the rents, issues and profits received, and prays that an account may be taken of the defendant's receipts from the farm, and that, if upon such accounting he shall be found to be indebted to the complainant, that he may be decreed to pay the amount of such indebtedness, and if the complainant shall be found to be indebted to the defendant that he may be allowed to pay the amount due from him, which he tenders himself ready to do, and redeem the property, or, in default of such payment, that the farm may be sold and the defendant paid out of the proceeds of the sale.

To this bill the defendant answers, denying that the farm was of the value alleged in the bill, or, indeed, much in excess of the amount due to the defendant, and denying that he designed to impose upon or oppress the complainant, and that he did in the manner alleged, or in any other way, oppress or take advantage of him, or hinder or thwart him in his efforts to borrow money, and

denying that the agreement set out in the bill was designed to convert the deed to the defendant into a mortgage, or was so understood, or that such is its legal effect. It claims that the agreement is what the defendant insists it appears plainly upon its face to be—a contract for the repurchase of the farm within six months. The answer alleges that this time for repurchase was subsequently extended by the defendant until the complainant gave up all hope of repurchasing the farm and surrendered the possession of it, which, from the sheriff's sale, he held as tenant of the defendant under written leases. It further alleges that the complainant for ten years has acquiesced in the defendant's claim of absolute title to the farm, and has stood by and witnessed him making extensive and necessary improvements to it, and has delayed the commencement of his suit until after the death of the defendant's attorney, and the loss of his evidence in the case.

The answer does not give the account that the bill asks.

Because of this failure to set out an account of the rents, issues and profits of the farm, and of the timber, bark &c. cut and sold from it, the complainant excepted to the answer. Upon considering the exceptions, the master reported that they were not well taken, because the defendant should not be required to spread such an account upon the record until the court had passed upon the complainant's right to redeem and have the account.

The question now presented by exceptions to the master's report is one which has given rise to much contrariety of opinion among judges. Upon the one hand, it has been argued that a defendant may refuse to give an account in his answer to a bill for account, when he denies the facts upon which complainant's right to an account is based, or sets up an affirmative defence, because it is uncertain whether the complainant will establish his right to an account, and in such uncertainty the defendant should not be subjected to that which may be a heavy burden ; or the complainant's asserted right may be a mere pretence to draw an account by answer, to which the complainant has not in reality the slightest shadow of right, and the defendant should

not, until the right is determined, be put to an unjust, and may be hurtful expense; that it is enough for the complainant's purposes that the account may be had in the master's office after the right to it shall have been determined.

Upon the other hand, it has been contended that the defendant can protect himself from giving an account by plea or demurrer, but when he submits to answer he must answer fully, giving the required account, for by so doing a balance may be shown in favor of the complainant that he may be willing to accept at the hearing in expedition of his suit, and that will appear which may be useful upon numerous motions in the suit, and discovery may be had which in case of delay might be lost by the defendant's death.

It is unnecessary to state the numerous cases upon this vexed question. They have been admirably reviewed by Chancellor Kent, in *Phillips* v. *Prevost, 4 Johns. Ch. 205 (1819)*, and by Chancellor Cooper, in *French* v. *Rainey, 2 Tenn. Ch. 640 (1876)*.

In the former of these cases, Chancellor Kent held, where a bill was filed by executors of a creditor claiming, under a judgment of more than thirty-six years' standing, against the legal representatives of the debtor, above thirty years after his death, without accounting for the delay, or showing any attempt to recover the debt at law, and seeking a discovery and account of assets, that the defendants, after admitting the death of the original parties to the demand, and the representatives of the plaintiffs and defendants, might object to making any disclosure of assets on the ground of the staleness of the demand and the great lapse of time. The chancellor's view was, that it must depend upon the reason and convenience of the case whether the general rule, that when a defendant submits to answer he must answer fully, will be enforced. That that rule, though it may be termed general, is not inflexible.

The conclusion reached by Chancellor Cooper, in *French* v. *Rainey*, was, that, where the objection to discovery is founded upon a denial of the complainant's right of suit, the defendant is entitled, by answer, to protect himself from the discovery con-

sequential to the relief sought, but not from the discovery which will aid the complainant in obtaining that relief.

Judge Story, in his work on *Equity Pleadings* § *852 b*, says: "But where the defendant sets up a title in himself, apparently good, and which the plaintiff must remove to found his own title, the defendant is not generally compelled to make any discovery not material to the trial of the question of title."

I am unable to find that the question presented in this case has ever been discussed in this State. Bearing upon the procedure upon bills for account, Chancellor Green, in *Hudson* v. *Trenton Locomotive and Machine Manufacturing Co., 1 C. E. Gr. 475*, decided that, upon a bill for an account, the ordinary decree is that an account shall be taken, and that the only material evidence upon the original hearing is that which conduces to prove the complainant's right to an account, and that evidence as to the particular items of the account is irrelevant at this stage of the case. This case seems to be the nearest approach, in this State, to the principle underlying the question now before me. I think that, upon principle, where a bill is filed for an account, and the account does not appear by the allegations and charges of the bill to be useful in establishing the complainant's right to it, but appears merely as that which must ultimately be rendered in fulfillment of an obligation the enforcement of which is sought, the defendant need not set out the account in his answer, in case it is necessary to resort to answer rather than to plea or demurrer in resisting the complainant's alleged right to the account; but if the right to relief may be resisted by plea or demurrer, and the defendant, instead of availing himself of those pleadings, chooses to answer, he must do so fully and without reserve, setting out the account, for his submission to answer in such case is voluntary. The demurrer and plea both admit the facts stated in the bill. The demurrer denies that they make a case against the defendant, and the plea avoids their force by the presentation of matter in avoidance of the case made by them. When those facts tend to establish a case of fraud charged in the bill, as they do in the case in hand, it may become necessary to deny them in order to give efficacy to an affirmative defence that otherwise might have been

set up by plea, or that, in the absence of them, might have been made by demurrer. In such a case, answer must of necessity be resorted to. I conceive the case before me to be of this kind. The alleged contrivances of the defendant Bartles to deprive Pace of his farm, have such an important bearing upon the case that their denial is necessary to a perfect defence. It was then necessary that the defendant should answer. It is manifest that the account demanded cannot be useful in establishing the complainant's right to the relief he asks, and that when rendered it must cover the minute details of farming operations for a period of ten or more years. After the right of the complainant to have the account shall be determined, the account can readily be had in the master's office. I do not think that it will subserve either justice or convenience to require that this account shall be set out in the answer, and I will therefore overrule the exceptions, but, because of the conflict among the authorities, without costs.